**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| JULIE RODRIGUEZ-SANTANA | * |
| Plaintiff | * |
| v. | *   Civil No. 06-1490(SEC) |
| COMMONWEALTH OF PUERTO RICO, et al. | * |
| Defendants | * |

**OPINION AND ORDER**

Pending before the Court is Co-defendants Pedro Toledo Dávila's and Carmen Lugo Somolinos' (hereinafter Mrs. Lugo)[1] motion to dismiss or to stay proceedings in this case (Docket # 21), which Plaintiff opposed (Docket # 24). After reviewing the filings and the applicable law, the individual defendants' motion will be **GRANTED in part and DENIED in part**.

**Factual Background**

Plaintiff's complaint alleges that she has been an employee of the Puerto Rico Police Department (Police Department) since 1993, and that during the years between 1993 and 2004 she was promoted in several occasions. As per Plaintiff's complaint, her last promotion took place on August, 2004, when she was appointed to the position of "Administrator of Office Systems II, number 5", a career position. Plaintiff claims that on May 19, 2005 she was demoted to the position of Secretary to an Attorney II of the Police Department's Legal Division, directed by co-defendant Mrs. Lugo, due to her affiliation to the Popular Democratic Party (PDP). Toledo, who took over the Police Department on January 2005, was a member of the New Progressive Party (NPP). Finally, Plaintiff alleges that the Police Department's contentions that her demotion was due to administrative reasons are a pretext because she was replaced by another employee who was a member of the NPP.

---

[1] Both defendants will be collectively referred to as the individual defendants.

**Civil No. 06-1490(SEC)**                                                                                                     2
_____

Plaintiff's complaint named as defendants the Commonwealth of Puerto Rico, the Police Department (PR Police Department), Pedro Toledo (Toledo), Chief of the PR Police Department, and Carmen Lugo (Lugo), Director of the Police Department's Legal Division. She seeks monetary and equitable relief from defendants for their actions, which she claims are in violation of the First Amendment to the United States Constitution, the Puerto Rico Constitution and the Article 1802 of the Puerto Rico Civil Code.

On March 26, 2007, the Court dismissed all monetary claims against the Commonwealth and the individual defendants in their official capacity. See, Docket # 36. However, Plaintiff's claims for monetary and equitable relief against the individual defendants are still pending before the Court. The individual defendants moved to dismiss the case alleging that they are entitled to qualified immunity. In the alternative, they pray that the Court stay or dismiss the proceedings in this case pending adjudication of Plaintiff's parallel complaint in the state court consistent.

**Standard of Review**

In assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-6 (1957), quoted in, Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 654 (1999).  See also, Correa-Martínez v.Arrillaga-Beléndez, 903 F.2d 49, 52 (1st Cir. 1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.").

But "[a]lthough this standard is diaphanous, it is not a virtual mirage." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Id.

In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle, 142 F.3d at 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)). See also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Moreover, Courts "will not accept a complainant's unsupported conclusions or interpretations of law." Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993).

**Applicable Law and Analysis**:

*Qualified immunity*

Determining whether a defendant is entitled to qualified immunity requires application of a three-part test: (1) whether the plaintiff has alleged a constitutional violation; (2) whether the law was clearly established that defendants' action violated a constitutional right of the plaintiff; and (3) whether a reasonable official would have understood that his actions violated a constitutional right. Rivera-Jiménez v. Pierluisi, 362 F. 3d 87, 93 (1st Cir. 2004)(hereinafter Pierluisi).

We may address the first and second prong of the test jointly, as they are closely *related. We must determine whether Plaintiff has alleged a constitutional violation clearly* established by law. This analysis is time-critical. Nereida González v. Cirilo Tirado, 990 F. 2d 701, 704 (1st Cir. 1993)(hereinafter Tirado). That is, in order to determine if a defendant's conduct violated a clearly established constitutional right, the Court must attend to the

existing case law at the time the alleged violation occurred and ascertain whether this case law gave the defendant "fair warning that [his] conduct violated the plaintiff's constitutional right." Pierluisi, 362 F. 3d at 94. In Tirado, Plaintiff, a well known member of the New Progressive Party, alleged that after the elections of 1984 the Popular Democratic Party took over the government and that, not long thereafter, she was demoted to a clerical position. Tirado, 990 F. 2d at 702. She claimed that her demotion was motivated by the defendant's political animus against Plaintiff. The First Circuit concluded that defendants were entitled to qualified immunity because at the time the alleged violation to Plaintiff's constitutional right took place, "it was subject to much conjecture whether the constitutional prohibition against politically motivated firings extended to other personnel actions, such as refusals to hire, demotions, and failures to promote." Tirado, 990 F. 2d at 704.

This is not the case here. It is now well established that "promotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." Rutan v. Republican Party, 497 U.S. 62, 75 (1990)(hereinafter Rutan). The Supreme Court in Rutan rejected the Seventh Circuit's proposed rule of protecting government employees only from politically charged employment decisions that were the "substantial equivalent of a dismissal". Id. The Court concluded that such a restrictive test "fail[ed] to recognized that there are deprivations less harsh than dismissal that nevertheless press state employees and applicants to conform their beliefs and associations to some state-selected orthodoxy." Id.

In Vélez-Herrero v. Guzmán, 330 F. Supp. 2d 62 (D.P.R. 2004)(hereinafter Herrero), the court denied qualified immunity to defendants because their actions, as alleged by Plaintiffs, violated Plaintiffs' clearly established right not to be subjected to of employment actions motivated by political animus. The Plaintiffs in Herrero, like Plaintiff in this case, alleged that they were demoted from their positions due to political discrimination. The court found that Plaintiffs' allegations, if proven, would "make out a constitutional rights claim of

**Civil No. 06-1490(SEC)**                                                                                                          5
_____

political discrimination." Herrero, 330 F. Supp. 2d at 69.

The instant complaint alleges that Plaintiff, prior to Toledo's incumbence, held a career position as an Administrator of Office Systems II within the Puerto Rico Police Department, which did not require political affiliation, and that following Toledo's nomination as Chief of the Police Department, she was transferred, following Toledo's orders, to the Police Department's Legal Division. See, Docket # 1, ¶¶ 8-17. She further avers that the new position entailed lower responsibilities, like filing and photocopying.. She further alleged that Mrs. Migdalia Zayas, a member of the New Progressive Party, was assigned to occupy Plaintiff's prior position. Finally, Plaintiff alleges that Toledo's actions were motivated by his political animus towards Plaintiff. Plaintiff's allegations, if established, would constitute a claim for political discrimination, at least as it relates to Toledo's actions. As such, we answer in the affirmative the first and second questions of the qualified immunity analysis as to Toledo. That is, Toledo's actions against Plaintiff, if proven, would constitute a violation of Plaintiff's right not to be subject to adverse employment actions because of her political beliefs; and said right, as discussed above, was clearly established by law at the time Toledo's actions took place.

However, Plaintiff's allegations as to Mrs. Lugo cannot get to first base her claim for political discrimination against this defendant. Plaintiff's only allegations against Mrs. Lugo are that she was, at the time of her transfer, the Director of the Police Department's Legal Division, and that she was affiliated to the New Progressive Party. Plaintiff alleges that the transfer was made at Toledo's orders, and, at no point, does she allege that Mrs. Lugo took part in that decision. She does not make any allegation, nor can we make any reasonable inference from her allegations, that Mrs. Lugo took actions in violation of Plaintiff's constitutional rights. As such, we conclude that Plaintiff's complaint fails to allege a constitutional violation by Mrs. Lugo. Thus, we **GRANT** Mrs. Lugo's motion to dismiss; all of Plaintiff's claims against her are hereby **DISMISSED**.

**Civil No. 06-1490(SEC)** 6
_____

Because we concluded that Toledo's action may constitute a violation of Plaintiff's clearly established right to be free of political discrimination, we move to the next step in the qualified immunity inquiry: we must determine whether a reasonable official would understand that his actions violated a constitutional right. Pierluisi, 362 F. 3d at 93. We conclude that a reasonable official would understand that it is constitutionally impermissible to demote a government employee because of his exercise of a constitutional right to affiliate with a given political party. As such, we conclude that Toledo's motion requesting qualified immunity, at least at this point, is unwarranted. Therefore, his request is hereby **DENIED**.

*Colorado River abstention*

Toledo also argues that we should dismiss (or stay) this case because there is a pending case in state court related to the same facts alleged in the above captioned complaint. He argues that dismissal is proper consistent with the US Supreme Court's decision in Colorado River Water Conservation District v. U.S., 424 U.S. 800 (1976)(hereinafter Colorado River). Toledo is fishing in an empty stream. The abstention doctrine set forth in Colorado River is of a very exceptional nature. The general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction." Id., at 817. Therefore, there is a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Id.

There are exceptional circumstances in which abstention, although not required, may be proper. Within these exceptions are: (1) usually the first court to assume jurisdiction over the *res* assumes such jurisdiction to the exclusion of other courts; (2) in cases where there is concurrent jurisdiction between a federal and a state court, the federal court may consider the following factors: (i) inconvenience of the federal forum; (ii) desirability of avoiding piecemeal litigation; and (iii) the order in which jurisdiction was obtained by the concurrent forums. Colorado River, 424 U.S. at 818. Two other factors were also considered by the US Supreme Court in Moses v. Mercury Construction Corp., 460 U.S. 1 (1983); to wit, (1)

**Civil No. 06-1490(SEC)**                                                                 7
_____

whether federal or state law controls and (2) whether the state forum will adequately protect the interests of the parties. Currrie v. Group Ins. Commission, 290 F. 3d 1, 10 (1st Cir. 2002)(hereinafter Currie). Toledo has not argued that either of these factors are present and that they should weigh more than the Court's obligation to exercise jurisdiction in this case.

Toledo argues, however, that the First Circuit's decisions in Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F. 2d. 529 (1st cir. 1991)(hereinafter Villa Marina) and Currie, 290 F. 3d 1 (1st Cir. 2002), favored the application of the Colorado River abstention when the parallel state litigation would render moot the pending federal action.

In Villa Marina the First Circuit affirmed the District Court's dismissal by means of the Colorado River abstention because the case presented a "sufficiently novel question of law": whether Article 1802 of the Puerto Rico Civil Code recognized a claim for tortious interference with a prospective business advantage. Villa Marina, 947 F. 2d at 533. Certainly this consideration is inapposite here. Furthermore, the District Court found that the federal action instituted by the Plaintiffs in federal court was "vexatious and reactive in nature" because it followed the state court's denial of the preliminary injunction. The District Court also emphasized that continuing with the suit would defeat the removal policy. Finally, it stressed that the state court action was far more advanced and had engaged in more substantial proceedings. None of these circumstances are present in this case.

In turn, in Currie, the First Circuit held that it would grant Plaintiff's request to stay the appeal pending resolution of parallel state litigation which would eventually moot or otherwise inform the federal litigation. In doing so, it concluded that the last two factors of the Colorado River abstention, added in Moses, favored its application. In Currie, although two out of the three claims were federal constitutional claims, the Court would not need to resolve these issues if the Court was able to resolve the case based on the statutory claim. Currie, 290 F. 3d at 10. In that case there was a state law subject matter (whether the defendants -who issued an insurance policy to plaintiffs- violated Massachusetts' anti

**Civil No. 06-1490(SEC)**                                                                                                          8
_____

discrimination law) that underlay the federal claims (American with Disabilities Act, 42 U.S.C.A. § 12101 *et seq*.). The First Circuit reasoned that there was a federal question intertwined with a complex issue of state law, which was pending in the state court. There is no such problem here. Here, Plaintiff's causes of actions are premised on the constitutional violation of her right not to be discriminated against because of her political beliefs. Plaintiff's tort claim is necessarily dependent upon determining that Toledo violated Plaintiff's constitutional right.

Toledo also argues that abstention is appropriate under the Burford abstention because this case presents "difficult questions of state law bearing on policy problems of substantial public import." Docket # 21, p. 4. We will not address this argument as it is premised on the faulty statement that this case presents difficult questions of state law. Because Toledo's arguments are without merit, his request to dismiss or stay this case is hereby **DENIED**.

**Conclusion**

For the reasons set herein, individual defendants' motion to dismiss or stay this case (Docket # 21), is hereby **GRANTED in part and DENIED in part**. Consistent with this opinion and order, all of Plaintiff's claims against Mrs. Lugo are hereby **DISMISSED**. Partial judgment shall be entered accordingly.

      **SO ORDERED.**
In San Juan, Puerto Rico, this 14th day of May, 2007

                                                S/ *Salvador E. Casellas*
                                                SALVADOR E. CASELLAS
                                                United States District Judge