IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JULIE RODRIGUEZ-SANTANA  *
                                            *
    Plaintiff                               *
                                            *
v.                                                 *         Civil No. 06-1490 (SEC)
                                            *
COMMONWEALTH OF PUERTO   *
RICO, et al                             *
                                            *
    Defendants                       *
**********************************

**OPINION AND ORDER**

Before the Court is Defendants' Motion for Summary Judgment[1] (Docket # 122), and Plantiff's opposition thereto. See Docket # 124. For the reasons set forth below, the Court will **GRANT** the Motion for Summary Judgment.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Morales-Figueroa v. Banco Bilbao Vizcaya Argentaria, 550 F. Supp. 2d 220, 224 (D.P.R. 2007).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the non-movant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48

---

[1] The motion is titled Motion to Dismiss and/or For Summary Judgment. However, as it substantially complies with Local Rule 56 it has been considered as a motion for summary judgment.

**Civil No. 06-1490 (SEC)**                                                                                              2

(1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(citing Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (citing Maldonado-Denis, 23 F.3d at 581). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8 (citing Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

**Procedural and Factual Background**

The complaint avers that Julie Rodriguez Santana ("Plaintiff" or "Rodriguez") entered the Puerto Rico Police Department ("PRPD") in 2001 as a trust employee[2] under Superintendent,

---

[2] "In Puerto Rico, public employees are categorized as "career" or 'trust/confidential' employees. Trust employees are involved in the formulation of policy and are 'of free selection and removal.' 3 P.R. Laws Ann. § 1350(8). Career

**Civil No. 06-1490 (SEC)**                                                                                                 3

Pierre Vivoni[3] Then, as Vivoni´s tenure expired in 2004 with the change of administrations, Rodriguez was promoted to a career position as an Office Systems Administrator II ("OSA II").

In early 2005, Pedro Toledo Dávila ("Toledo") began his duties as Superintendent of the PRPD. The Puerto Rico media associates Toledo with the New Progressive Party ("NPP"), even though his most recent trust appointment came under a Popular Democratic Party ("PDP") administration. Rodriguez alleges that under the administration of Toledo, she was transferred from the Superintendent´s Office to the Legal Affairs Office. She alleges that Carmen T. Lugo Somolinos ("Lugo"), then Director of the Legal Affairs Office of the PRPD, failed to assign her with work commiserate with her position as an OSA II, and assigned her to act as secretary for an Attorney II. Finally, she alleges a NPP sympathizer replaced her in her prior position at the Superintendents Office.

The above factual background is adduced from the Complaint. Due to the very lax pleadings filed by both parties, the relevant uncontroverted material facts are much more meager.

The Superintendent of the PRPD is responsible for PRPD's administration. Statement of Uncontroverted Material Facts ("S.U.M.F.") Docket # 121, ¶ 1. Rodriguez started working at PRPD on March 16, 2001, in Trust Service as a Confidential Office Systems Administrator I. S.U.M.F., ¶ 13. On August 14, 2004, the PRPD gave Plaintiff a promotion to Office Systems Administrator II ("OSA II") within the Career Service. The description of the Secretarial Service provided in the General Order states:

> The Office of the Superintendent shall have secretarial services available to perform all the administrative work it generates, for which it shall prepare and oversee all the files and reports related to the matters incumbent on them. In addition, it shall prepare and oversee the files of the employees assigned to the

---

employees are 'selected strictly on merit and can be removed only for cause.'" Colon-Santiago v. Rosario, 438 F.3d 101, 104 (1st Cir. 2006) (citing Jiménez- Fuentes v. Torres-Gaztambide, 807 F.2d 236, 246 (1st Cir.1986)).

[3] In 2001, Sila Calderon, a member of the PDP, became Governor of the Commonwealth of Puerto Rico. She appointed Vivoni as Superintendent of the PRPD. In 2003, Sila Calderon announced she would not seek reelection for a second term. Anibal Acevedo Vila subsequently won both the PDP's primary, and the general election, succeeding Calderon in office in 2005. Accordingly, the PDP controlled the executive branch of the Commonwealth, and the appointment of the Superintendent of the PRPD from early 2001 until early 2009.

**Civil No. 06-1490 (SEC)**                                                                                         4

>office, supervise and coordinate any administrative work, and keep a checklist and inventory of property assigned to the office.

Docket # 121-2, Exh. 4. Subsequent to the change of administration in 2005, the Department transferred Rodriguez from the Superintendent's Office to the Legal Affairs Office, administratively on May 18, 2005, and then formally on August 2, 2005. Said transfer led to neither a demotion from OSA II, nor a reduction in her pay or benefits. S.U.M.F., ¶ 17. More specifically, Plaintiff admits that her move to the Legal Affairs Office, " . . . did not result in a loss of career status as an [OSA II] . . ." Id. She remained at the Legal Affairs Office until October 26, 2007, when she was once again transferred, this time to the Assistant Superintendency for Police Services and Volunteer Programs. S.U.M.F., ¶ 18. Plaintiff admits that, prior to her transfer, she never discussed her political affiliation with Toledo nor Lugo. S.U.M.F., ¶ 19. In her deposition, Plaintiff also alleges that she never met personally with Pedro Toledo. See Docket # 124 at Exh. 3.

As a result of the alleged constructive demotion, Rodriguez requested relief under §1983 for violations of her First, Fifth, and/or Fourteenth Amendment rights. Rodriguez has also invoked supplemental jurisdiction for certain analogous Commonwealth-law claims. In due course, Defendants filed the instant motion.

**Applicable Law and Analysis**

Since Plaintiff's Complaint requests relief under 42 U.S.C. § 1983 because she was allegedly the subject of political discrimination, this Court shall begin by outlining the contours of these claims.

Patronage Immunity

Given that the case at hand is based on alleged First Amendment violations, Plaintiff must demonstrate that partisanship was a substantial or motivating factor in an adverse employment action. See Jirau-Bernal v. Agrait, 37 F.3d 1, 3 (1st Cir.1994); Maymi v. Puerto Rico Ports Authority, 515 F.3d 20, 25 (1st Cir. 2008). Therefore, ". . . the alleged adverse employment action must result 'in conditions 'unreasonably inferior' to the norm for that position." Maymi, 515 F.3d at 25 (quoting Rosario-Urdaz v. Velazco, 433 F.3d 174, 178 (1st Cir.2006)); see also

Carrasquillo v. Puerto Rico, 494 F.3d 1, 4 (1st Cir. 2007). However, in the case at hand, Defendants have made the allegation that Plaintiff's former position at the Superintendent's Office is covered under the exception established by Branti v. Finkel, 445 U.S. 507, 518 (1980), ". . . where political affiliation is an appropriate requirement for the effective performance of the public office involved." Maymi, 515 F.3d at 26 (quotations omitted).

Nevertheless, Defendants have not provided **any** case specific facts that Plaintiff occupied any confidential relationship with the policy making process, or any specific evidence she was in regular contact with confidential policy related information. Instead, they argue that her administrative position within the Superintendent's Office made her immune to First Amendment protection. However, " . . . it is the government's burden to demonstrate an overriding interest in order to validate an encroachment on protected interests . . ." Elrod v. Burns, 427 U.S. 347, 368 (1976).  Here the inquiry is fact-based and requires elucidating whether the office a plaintiff holds, ". . . resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." See Jimenez Fuentes v. Torres Gaztambide, 807 F.2d 236, 242 (1st Cir. 1986).

This Court agrees that Plaintiff's categorization as a career, and not as a trust employee, is not dispositive of the controversy. Lopez-Quinones v. P.R. Nat'l Guard, 526 F.3d 23, 26 (1st Cir. 2008). Again it is necessary to reiterate that, Defendants have not provided this Court with sufficient facts, which would permit a finding that Plaintiff's position as a secretary for a career employee would exempt her position from First Amendment Protection. As an administrative employee she never performed policy making functions, and no evidence has been proffered that she regularly handled confidential information. Id. In fact, Plaintiff's sworn statement avers that she reported to a non-policy making career employee, and that Toledo had five (5) confidential secretaries. See Docket # 124-2. Furthermore, Plaintiff never had any personal contact with Toledo.

The Supreme Court and the First Circuit have reiterated time and time again that," . . .

**Civil No. 06-1490 (SEC)**                                                                 6

non-policymaking governmental employees are protected by the First Amendment from discriminatory promotion, transfer, recall, or hiring on the basis of political affiliation." Morales-Santiago v. Hernandez-Perez, 488 F.3d 465, 466 (1st Cir. 2007) (referring to Rutan v. Republican Party of Illinois, 497 U.S. 62, 79 (1990). In the case at bar, Defendants have not provided sufficient evidence that political affiliation was an appropriate condition for Plaintiff's position at the Superintendent's Office. Accordingly, their Motion for Summary Judgment on these grounds shall be **DENIED**.

      Working Conditions

As stated above, a redressable claim for an alleged adverse employment action must result in conditions "unreasonabl[y] inferior to the norm for that position." Maymi, 515 F.3d at 25. When coming to this conclusion, "[a]ctual functions of the job, not titles, control, and an official description of job functions is a presumptively reliable basis for determining those functions." Lopez-Quinones, 526 F.3d at 26 (citing Olmeda v. Ortiz-Quinonez, 434 F.3d 62, 66 (1st Cir. 2006)).

The general categorization of an OSA II is as performing, "[s]ecretarial work that consists in taking diction and transcribing diverse documents, as well as performing other related tasks." See Docket # 121-7 at 1. This level of employee is assigned as a main OSA II in an office of the PRPD. Id. Furthermore, they are generally assigned under the supervision of a higher-ranked employee. Id. Amongst the possible activities listed in the OSA II's job description is, "[p]hotocopying the documents that are received and sent out of the employee's work unit."Id. at 3. An OSA II might also be required to process correspondence and other types of file dispatching. Id. at 2-3.

Rodriguez complains that she was assigned to file dispatching, and assigned to an Attorney II. The record is unclear as to whether the Attorney II was Lugo.[4] However, Lugo's November 15, 2005, Secretarial Personnel Redistribution memo assigns her to work directly

---

[4] Nevertheless, this Court concludes that an Attorney II should be considered a higher-ranked employee. Furthermore, the Office of Legal Affairs is a crucial area within the PRPD.

under the director of the Legal Affairs Office. These assignments can hardly be construed as unreasonably inferior to the norm for an OSA II. This Court rejects Plaintiff's contention that concurring with another OSA II necessarily constitutes an unreasonable assignment, especially in the Legal Affairs Office, an area crucial to the PRDP's efficient functioning. Furthermore, this Court reiterates that the PRDP took no action prejudicing Plaintiff's career status, benefits, or salary. The reassignment included in this complaint appears to be a necessary ramification of working within a large government bureaucracy.

      Discrimination Claim

The First Amendment protects non-policymaking public employees from adverse employment actions due to their political opinions. Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46, 51 (1st Cir. 2005). To establish a *prima facie* case of political discrimination, a plaintiff must show that political affiliation was a substantial or motivating factor behind the adverse employment action. Id.; Rodríguez-Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998); Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994); see also Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 131 (1st Cir. 2005). A plaintiff does not meet this burden by merely offering unsupported and speculative assertions regarding political discrimination, nor by relying on the existence, without more, of a politically charged atmosphere. See, Rivera-Cotto, 38 F.3d at 614. As with Section 1983 actions generally, a Plaintiff in a political discrimination case must link each defendant with the alleged discriminatory practices. See González-Piña v. Rodríguez, 407 F.3d 425, 432 (1st Cir. 2005). If Plaintiff succeeds in offering proof of political discrimination, the burden shifts to the Defendants, who must then prove that they would have taken the same employment action regardless of Plaintiff's political beliefs. Mercado Alicea, 396 F.3d at 51 .

In the case at bar, no compelling evidence has been proffered that Rodriguez's political affiliation was taken in to consideration in her transfer. In fact, she admits that she is ignorant to whether Defendants had knowledge of her political affiliation, and that Toledo had never interacted with her. Moreover, Rodriguez has failed to show that her transfer from the Superintendent's Office to the Legal Affairs office violated the PRDP's regulations. Her claims are all the more dubious given that Toledo himself was a trust appointment in Governor Anibal

Acevedo Vila's PDP administration. In light of the above, this Court must conclude that Plaintiff has failed to establish that party affiliation, and not internal personnel decisions, motivated her transfer. This is a crucial element of any political discrimination case. <u>Ruiz-Casillas v. Camacho-Morales</u>, 415 F.3d 127, 131 (1st Cir. 2005).

To rehash the above discussion, this Court has concluded that Plaintiff did not experience an adverse employment action creating working conditions unreasonably inferior to the norm for an OSA II, and also that she has failed to proffer evidence of discriminatory animus. Consequently, Plaintiff's federal political discrimination claims against Defendants will be **DISMISSED WITH PREJUDICE.**

### Supplemental Law Claims

Having dismissed Plaintiff's federal law claims against Defendants, we will similarly dismiss her Commonwealth law claims against them. See <u>Newman v. Burgin</u>, 930 F.2d 955, 963 (1st Cir. 1991) ("[t]he power of a federal court to hear and to determine sate-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit."). Plaintiff's supplemental law claims will be **DISMISSED WITHOUT PREJUDICE.**

### Conclusion

For the reasons set herein, Defendants' Motion for Summary Judgment is **GRANTED.** Plaintiff's federal claims will be **DISMISSED WITH PREJUDICE**. Plaintiff's state-law claims are **DISMISSED WITHOUT PREJUDICE**. Judgement shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 23nd day of April, 2009.

S/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge